# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JEANETTE FITZGERALD,

        Plaintiff,

v.

                                                No. 11-CV-956 JEC/ACT

LONG-TERM DISABILITY PLAN
OF PACKARD'S ON THE PLAZA, INC.
and RELIANCE STANDARD LIFE
INSURANCE COMPANY,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendants' Motion for Summary Judgment* (Doc. 23) ("Motion") and *Plaintiff's Response in Support of Motion to Reverse ERISA Benefits Denial and Motion to Strike Post-Appeal Material From the Administrative Record* (Doc. 27) ("Cross-Motion"). Having reviewed the pleadings, the administrative record and the governing authority, and being otherwise fully informed, the Court finds that Defendant's Motion is not well-taken and will be denied. The Court further finds that Plaintiff's Cross-Motion is well-taken and will be granted, in part, in that the Court finds that Plaintiff has exhausted her administrative remedies, and that a *de novo* standard of review governs her claim. The Court will defer its ruling on Plaintiff's request for reinstatement and proper calculation of her benefits until it has received additional briefing from the parties.

**I.      Background**

This case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Plaintiff, Jeanette Fitzgerald, was employed by Packard's on the Plaza as a weaving specialist. Through this employment, Plaintiff participated in a disability insurance plan ("Plan"), issued and administered by Reliance Standard Life Insurance Company ("Reliance"). Plaintiff received both short-term disability ("STD") and long-term disability ("LTD") benefit payments until February 9, 2011, when Reliance determined that she no longer qualified as disabled under the Plan. Defendant appealed through the administrative process provided under ERISA. Plaintiff alleges that Reliance failed to make a decision on her request for review within the time limits required by ERISA and seeks restoration of her benefits. Reliance contends that that Plaintiff is precluded from challenging the termination of her LTD benefits because she failed to exhaust her administrative remedies and refused to attend an independent medical examination ("IME"). Reliance further contends that its denial of benefits was not arbitrary or capricious, and that it is entitled to summary judgment as a matter of law.

   **A.      Approval of STD and LTD Benefits**

On August 27, 2008, Plaintiff slipped and fell on a wet floor at work, landing on both knees and injuring her knees and back. Administrative Record ("AR")[1] at 90. A short time later, plaintiff again injured her knees at work when an employee carrying a rolled up rug struck her and she fell on her right knee. AR 89. Plaintiff sought treatment from an orthopedist, Dr. James Lubowitz, who performed arthroscopic surgery on her right knee on November 19, 2008. AR 99, 102, 859, 877, 880. On December 19, 2008, Dr. Lubowitz completed a Physician's

---

[1] The Administrative Record in this case consists of a claim file, which contains 892 pages in numerous volumes, and is designated by the Court as the AR without reference to volume.

2

Statement stating that plaintiff was unable to work as of November 6, 2008, and Reliance accepted the claim and began paying Plaintiff STD benefits, followed by LTD benefits.  AR 76, 95.

Plaintiff returned to Dr. Lubowitz on March 27, 2009, and he stated in his treatment records of that date that Plaintiff "can return to restricted work duty (sedentary) if available." AR 815.  On April 17, 2009, Dr. Lubowitz treated Plaintiff again and scheduled her for a Functional Capacity Evaluation ("FCE").  AR 816.  During that visit, Dr. Lubowitz indicated that Plaintiff might need further knee surgery, and reported that "[h]opefully she can return to light duty work on June 1, 2009." *Id*.  Plaintiff then began seeing Dr. Paul Legant, an orthopedic surgeon, who also suggested an FCE and opined that by the first week of July, Plaintiff "would be able to return to work to at least a sedentary type duty."  AR 745.  On July 7, 2009, Dr. Legant released plaintiff to return to work as of July 8, 2009.  AR 792.  On the form, Dr. Legant described plaintiff as being able to perform "sedentary work."  *Id*.  Subsequently, in August 2009, after determining that Plaintiff was still experiencing symptoms in both knees, he referred her to a pain specialist, deferring to that doctor regarding her future "treatment, work status, medications, and disability forms, etc."  AR 748.

Plaintiff then began seeing Dr. Steve Kidman, a rehabilitation and pain physician.  AR 751.  Dr. Kidman recommended therapy for management of Plaintiff's pain and depression, and released Plaintiff from performing any work for three months beginning on July 16, 2009.  AR 648.  On that date, Dr. Kidman completed a workers' compensation certificate for Plaintiff's claim but did not respond to the questions on the form regarding how long Plaintiff could perform various activities in an eight-hour workday, including standing, walking, sitting, driving and using her hands for various tasks.  AR 649.  On September 3, 2009, Dr. Kidman completed a

3

form for Reliance and stated that Plaintiff was incapable of performing sedentary work and could not sit for more than an hour before she needed to elevate her legs and apply ice to relieve pain and swelling.  AR 743.  On October 15, 2009, Dr. Kidman continued Plaintiff's work release for an additional three months, and on January 3, 2010, Dr. Kidman completed another disability form for Plaintiff, which stated that the release from work was "until further notice."  AR 650, 723.  Dr. Kidman did not address Plaintiff's restrictions in these forms except to state that she was unable to work.  *Id*.

Dr. Kidman referred Plaintiff to another orthopedist, Dr. Steven Jones, who began treating her in late 2010.  AR 537, 394-395, 354.  Dr. Jones ordered MRIs of Plaintiff's knees, noted "snapping" in her right knee, accompanied by pain, and general tenderness on both legs.  AR 387, 381.  On November 3, 2010, Dr. Jones examined Plaintiff and notes "some mild tenderness,' but stated that "[t]he knee is otherwise stable."  AR 395.  Plaintiff also treated with Dr. Caroline Kingston, a family practice doctor, who diagnosed Plaintiff with depression.  AR 586, 601-602, 604, 616.

### B. Termination of LTD Benefits

On December 29, 2010, Reliance informed Plaintiff that she had been receiving LTD benefits for almost 24 months, and that during those 24 months, Plaintiff only needed to be disabled from performing the material duties of her regular occupation in order to qualify for benefits.  AR 566-567.  Reliance further informed Plaintiff that after the first 24 months, the Plan requires her to establish she is unable to perform the material duties of any occupation, defined by the Plan as "[a]ny occupation is one that the Insured's education, training or experience will reasonably allow," in order to continue to receive LTD benefits.  *Id*.  Reliance added that it had reviewed Plaintiff's updated medical records, and that the sedentary restrictions and limitations

4

identified by Dr. Legant in July of 2009 continued to be supported. AR 567. Reliance then "determined that while [Plaintiff ] was unable to work in her normal occupation, [she] appear[ed] capable of sedentary work activity." *Id*. Reliance stated that its vocational staff had concluded that Plaintiff could perform, and was qualified for, the occupations of information clerk, travel clerk and reservations agent. *Id*. Reliance concluded by stating that Plaintiff would no longer satisfy the definition of total disability applicable to her claim after February 9, 2011, and that her claim had been closed. *Id*. Plaintiff was then advised of her right to appeal. AR 568.

On January 26, 2011, Plaintiff informed Reliance of her concern that its review utilized incomplete records and submitted additional records for its review. AR 562-563. Plaintiff included a statement by Dr. Kingston on a prescription note, dated January 7, 2011, that Plaintiff could not resume work of any kind for at least 6 months due to neuropathic knee pain, bilaterally, fatigue and sleep deprivation. AR 552. The statement did not include any treatment records. *Id*. Plaintiff also included a form completed by Dr. Jones on January 5, 2011, which stated that Plaintiff "was off work at this time," without further explanation. AR 389. One week later, Dr. Jones submitted a second form in which he simply stated that plaintiff "cannot work any occupation," and left the rest of the form blank. AR 386. On January 24, 2011, Dr. Kidman also completed a capabilities form, in which he simply stated that Plaintiff was released from work "for any/all jobs or occupations." AR 470. Dr. Kidman did not fill out the portion of the form asking him to identify how long plaintiff could stand, walk, sit and drive as well as her ability to perform tasks with her hands. AR 470. On February 22, 2011, Reliance informed Plaintiff that it had reviewed the additional documentation, maintained its conclusion that Plaintiff was capable of sedentary work, and determined not to reverse its earlier decision regarding her ineligibility for additional LTD benefits. AR 523.

5

C.     **Plaintiff's Administrative Appeal**

On July 11, 2011, Plaintiff submitted her appeal with additional medical documentation. AR 503.  She included updated documentation, including a letter authored by Dr. Kingston and dated April 20, 2011, in which she opined that Plaintiff was suffering from severe chronic pain which was not relieved following surgery and that "conventional medications have resulted in adverse reactions which led [Plaintiff] to preclude virtually all physical activity."  AR 492.  Dr. Kingston stated that Plaintiff was significantly limited in walking, standing, sitting, lifting, reaching, carrying, pushing and pulling, and that she could only sit or stand a total of 4 hours, with breaks every 2 hours, in an 8 hour workday.  AR 493.  Dr. Kingston further opined that Plaintiff's physical and neurological status "precluded her ability to hold any form of standard workplace environment."  AR 492.

Plaintiff also included Dr. Jones's record of May 20, 2011, opining that Plaintiff was significantly limited in walking, standing, sitting, lifting, reaching, carrying, pushing and pulling.  AR 495-496.  Dr. Jones further recommended that Plaintiff sit or stand no more than two hours at a time, without interruption, and that such activity could not exceed a total of 3-4 hours per day.  *Id*.  Dr. Jones added that Plaintiff's chronic pain would affect her ability to concentrate in the workplace, and that "her injury induced pain and limitations make it impossible for her to maintain even a limited sedentary work schedule, [and that] locking on the right knee could result in potentially dangerous situations in the workplace or while driving an automobile."  *Id*.  Dr. Kidman completed the same questionnaire on May 9, 2011, and placed even greater restrictions on Plaintiff by limiting her to a maximum of 2 hours of sitting or standing in an 8 hour work day.  AR 497-498.  Dr. Kidman described Plaintiff's pain as "subjectively severe."  *Id*.  On May 20, 2011, Dr. Jones also prepared a report in connection with Plaintiff's worker's

6

compensation claim, in which he opined that it was "reasonable to believe that there may be a psychiatric component to [her complaints]." AR 381.

In response to the appeal letter, on August 3, 2011, Reliance requested that Plaintiff sign and return releases for Reliance to obtain updated records from her doctors.  AR 501.  Plaintiff returned the signed medical releases on August 11, 2011.  AR 490.  On August 25, 2011, Reliance informed Plaintiff's attorney that it had faxed requests for updated medical records to Drs. Kingston, Kidman and Jones and suggested that he contact these providers in order to facilitate receipt of the information.  AR 486.  Reliance further stated that "because statutory and internal guidelines set strict deadlines for completion of an appeal review, our request to these treatment providers for additional information will toll the statuary (sic) time frames for reaching an appeal determination, from the time of our request for additional information until such time as we receive the request for additional information."  *Id*.  On October 13, 2011, Reliance notified Plaintiff of its intention to take another 45 days to make its decision.  AR 333.  In the same letter, Reliance also informed Plaintiff that it intended to arrange for her to undergo an IME, which would toll the statutory time frame again, pending their receipt of the IME report. *Id*.  On October 18, 2011, Reliance notified Plaintiff that it had scheduled the IME with Dr. Clifford for November 3, 2011.  AR 329.  On October 26, 2011, Plaintiff notified Reliance that she would not attend the IME because the time for Reliance to make its decision had already passed and filed suit.  *See* AR 328.  On November 14, 2011, Reliance issued its appeal decision letter to Plaintiff, affirming its termination of her benefits.  AR 307-314.

**II.     Legal Standards**

    **A.     Standard of Review**

Plan beneficiaries, such as Plaintiff, have the right under ERISA to federal court review of benefit denials and terminations.  29 U.S.C. § 1132(a)(1)(B).[3]  Although the default standard of review for denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is *de novo*, when the benefit plan gives the plan administrator or fiduciary the discretionary authority to determine eligibility for benefits or to construe the terms of the plan, that determination is reviewed for abuse of discretion.  *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Trujillo v. Cyprus AMAX Minerals Ret. Plan Comm.*, 203 F.3d 733, 736 (10th Cir. 2000). However, where the plan and applicable regulations place temporal limits on the administrator's discretion, and the administrator fails to render a decision within these temporal limits, the claimant shall be deemed to have exhausted the administrative remedies by operation of law and the "*Firestone* deference no longer applies."  *Rasenack v. AIG Life Ins. Co.*, 585 F.3d 1311, 1315, 1318 (10th Cir. 2009).   Thus, the failure to render a final decision in a timely manner warrants a *de novo* standard of review.  *Id.*

"When applying a *de novo* standard in the ERISA context, the role of the court in reviewing the denial of benefits is to determine whether the administrator made a correct decision."  *Niles v. American Airlines, Inc.*, 269 Fed. App'x. 827, 832 (10th Cir. 2008) (citing *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 808-809 (6th Cir. 2002)).  The standard "is not whether 'substantial evidence' or 'some evidence' supported the administrator's decision; it is whether the plaintiff's claim for benefits is supported by a preponderance of the

---

[3]The parties agree that the Plan is an employee welfare benefit plan within the meaning of ERISA.  See 29 U.S.C. § 1002.  As such, this Court has federal jurisdiction under 29 U.S.C. § 1132(e)(1).

8

evidence based on the court's independent review." *Id.* at 833. A *de novo* review allows a court to engage in "independent weighing of the facts and opinions in … [the administrative record] to determine whether the claimant has met h[er] burden of showing she is disabled within the meaning of the policy. While the court does not ignore facts in the record, the court grants no deference to administrators' opinions or conclusions based on these facts." *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 518 (1st Cir. 2005) (citation omitted).

      **B.**      **Statutory Deadlines for Deciding an Appeal**

Under ERISA, the period of time for deciding an appeal of a benefits determination begins on the date when a claimant files an appeal, even if all of the information necessary to decide the appeal does not accompany the filing. 29 C.F.R. § 2560.503–1(i)(4). A plan administrator must notify a claimant of its benefit determination on review within a reasonable period of time but not later than [45] days after receipt of a claim, unless the plan administrator determines that special circumstances require an extension of time for processing of the claim. 29 C.F.R. § 2560.503–1(i)(1)(i).[1] That period may be extended an additional [45] days if the plan administrator determines such an extension is necessary. *Id.* However, written notice of the extension "shall be furnished to the claimant prior to the termination of the initial [45]-day period" and "in no event shall such extension exceed a period of [45] days from the end of the initial period." *Id.* The notice of extension "shall [also] indicate the special circumstances requiring an extension of time and date by which the plan expects to render the determination on review." *Id.*

For purposes of calculating time periods, "in the event that a period of time is extended as permitted pursuant to paragraph (i)(1), (i)(2)(iii)(B), or (i)(3) of this section due to a

---

[1] C.F.R. § 2560.503-1(i)(3)(i) provides that with respect to disability benefits, the time period shall be 45 days rather than 60 days for purposes of paragraph (i)(1).

9

claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information." 29 C.F.R. § 2560.503-1(i)(4).

In the event a plan administrator "fails to follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1(l). This "regulation, like its predecessor, protects a claimant by insuring that the administrative appeals process does not go on indefinitely." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 798 (10th Cir. 2010).

### III. Analysis

#### A. Plaintiff Has Exhausted Her Administrative Remedies

Reliance asserts that Plaintiff's is barred from seeking additional LTD benefits because she refused to attend an IME while her claim was still pending and failed to exhaust her administrative remedies. Doc. 29 at 5-6. Specifically, Reliance states that the time for issuing a final decision on appeal was tolled on three separate occasions: (1) when it requested signed medical releases from the Plaintiff on August 3, 2011; (2) when it requested updated medical records from her treating physicians and asked for Plaintiff's assistance in obtaining the records on August 25, 2011; and (3) when it notified Plaintiff that on October 13, 2011, that it was scheduling an IME for her on an unknown date in the future. Doc. 30 at 2. Reliance further states that because it tolled the clock based on these requests, its notification of the extension

was rendered timely on the 40th day of the appeal period. *Id*.

Plaintiff responds that Reliance asserts a freestanding tolling right that it does not have because "a request to the claimant tolls the time limit only if it requires the claims administrator to take an extension 'due to a claimant's failure to submit information necessary to decide a claim.'" Doc. 32 at 2 (quoting 29 C.F.R. § 2560.503-1(i)(4)). Plaintiff states that because she returned the signed releases, Reliance did not have a right to toll based on its subsequent requests to her providers for records. *Id*. Plaintiff further states that Reliance's repeated assertion that it requested an IME in a timely manner fails for the additional reason that even on the 90th day, there was still no IME set, and "the IME, followed by the IME doctor's report, followed by the decision would have been many weeks beyond the 90th day." *Id*. at 3.

A plan administrator may toll an extension from the date on which *the notification of extension is sent* to the claimant until the date on which the claimant *responds* to the request for additional information." 29 C.F.R. § 2560.503-1(i)(4) (emphasis added). "'The tolling period ends on the date on which the plan receives the claimant's response to the notice, without regard to whether the claimant's response supplies all of the information necessary to decide the claim.'" *McDowell v. Standard Ins. Co*., 555 F. Supp. 2d 1361, 1369 (N.D. Ga. 2008) (quoting 65 Fed. Reg. 70246, 70250 n.21 (2000)). "This interpretation of the tolling provisions makes sense in light of the fact that the tolling exists for the benefit of the claimant." *Id*.

In *McDowell*, the court found that the administrator misapplied the tolling process by tolling the time after the claimant had responded to its request for information but was unable to produce all of the medical records sought. *Id*. (adding that once a claimant responds to a notification of tolling, the plan administrator must continue to process the claim and appeal in

11

accordance with the deadlines).  Recognizing that in an ideal world, a claim reviewer would have complete medical records before issuing a decision, the court stated that "the regulations clearly contemplate that the clock will be running in less than ideal conditions." *Id*. The court concluded that by misapplying the tolling provisions, the plan administrator failed to render a timely decision on appeal, and it was appropriate for the plaintiff to file a lawsuit in reliance on the "deemed exhausted" regulation. *Id*.

Further, before an insurer may toll the review period, the plan administrator must furnish written notice that is also taking an extension because of the request for information, indicating the special circumstances and date by which the plan expects to render the determination on review.  *See Tsagari v. Pittney Bowes, Inc. LTD Plan*, 473 F. Supp. 2d 334, 338 (2007) (letter requesting medical information from the claimant failed to toll the review period because it did "not explicitly notify [the claimant] of the Plan's intent to seek an extension"); *Lindner v. BYK-Chemie USA, Inc*., 313 F. Supp. 2d 88, 92 (D. Conn. 2004) (finding that the claimant was deemed to have exhausted his administrative remedies because plan administrator's request for medical information failed to add that an extension of time was necessary or provide an anticipated date  of decision and did not meet the regulation's requirements for notice of an extension of time to process a claim); *Spectrum Health, Inc. v.Good Samaritan Employers Assoc., Inc*., 2008 WL 5216025, * 5 (W.D. Mich. 2008) (unpublished)(citing C.F.R. § 2560.503-1(i)(4), the court determined that the plan administrator's letter requesting a medical chart from the claimant and stating that its response time would be "temporarily stayed" until receipt of the chart failed to  trigger the tolling provision because the letter did not refer to an extension or supply the anticipated date of its decision).

The question of whether Plaintiff exhausted her administrative remedies is dependent on

whether Reliance complied with the regulatory deadlines of 29 C.F.R. § 2560.503-1(i)(1), (i)(3)(i).  Reliance received Plaintiff's appeal letter on July 15, 2011.  AR 258.  Reliance then requested signed releases from Plaintiff on August 3, 2011, and she returned them on August 11, 2011.  AR 490 and 501.  Once Plaintiff responded to Reliance's request for information, the tolling period ended and was not renewed upon requests to Plaintiff's doctors for additional information.  *See* 29 C.F.R. § 2560.503-1(i)(4).  Rather, Reliance was required to continue to process the appeal in accordance with the statutory deadlines.  *See McDowell v. Standard Ins. Co.*, 555 F.Supp.2d at 1367.  Reliance failed to do so.

      Reliance also failed to furnish written notice of an extension, indicating the special circumstances and date by which it expected to render a final decision, with any of its tolling notifications.  29 C.F.R. § 2560.503–1(i)(1)(i); *see also Tsagari v Pittney Bowes, Inc. LTD Plan*, 473 F. Supp. 2d at 334.  Indeed, the only notice of extension that Reliance did send was untimely, in that it was not sent to Plaintiff until October 13, 2011, almost 3 months after Reliance received Plaintiff's appeal, and inadequate, because it failed to set forth the date of the anticipated final decision or even the date of the IME appointment.  *See* AR 347; *see also Harper v. Reliance Standard Life Ins. Co.*, 2008 WL 2003175, *8 (N.D. Ill. 2008) (rejecting insurer's decision to deny an appeal because claimant refused to submit to an IME after the deadline for determining the appeal had passed, stating that policy provision giving the insurer the right to have the claimant examined while claim was pending did not allow insurer to determine that claim was "pending" simply because it had not made a decision yet).

      Accordingly, the Court finds that Reliance has misapplied the tolling provisions and failed to render a timely final decision under 29 C.F.R. § 2560.503–1(i)(1)(i).  Because Reliance failed to render a decision on appeal within the required time limits, Plaintiff is deemed to have

exhausted her administrative remedies, and the Court will deny Reliance's Motion. *See Rasenack*, 585 F.3d at 1315. (10th Cir. 2009).

### B. The Court Will Apply a *De Novo* Standard of Review to Plaintiff's Claim

Plaintiff agrees with Reliance that it has discretionary authority under the Plan to determine her eligibility for benefits. Doc. 27-1 at 12, citing AR 13. However, Plaintiff states that she is now entitled to a *de novo* review of her claim because Reliance failed to render a timely decision on her appeal. *Id*. Plaintiff further states that it is "clearly established in the Tenth Circuit that a reviewing court will not give deferential review to an ERISA claims administrator who fails to adhere to the prescribed time limits." *Id*. Reliance responds that because its decision was timely, "its decision to deny the claim for benefits must be reviewed under the deferential arbitrary and capricious standard of review." Doc. 29 at 7.

A plan administrator must not only "be given discretion by the plan, but the administrator's decision in a given case must be a valid exercise of that discretion." *Rasenack*, 585 F.3d 1311 at 1315 (applying *de novo* standard of review to the plaintiff's claim for benefits); *LaAsmar*, 605 F.3d 789 at 797, n.5 (court applied *de novo* standard of review where administrator issued belated decision 50 days beyond the statutory deadlines for determining the appeal and never formally sought an extension). The Court in *LaAsmar* stated that its "conclusion was bolstered" by the Department of Labor's stated intention that "' a decision made in the absence of mandated procedural protections should not be entitled to any judicial deference.'" *Id*. (quoting 65 Fed.Reg. 70246-01, 70255 (2000)). Further, the fact that an insurer eventually renders a final decision on appeal does not distinguish it from a case in which the insurer never issued a final decision because "the relevant fact is that the administrator failed to 'render a final decision within [the temporal] limits' prescribed by the Plan and ERISA."

*Rasenack* at 1318 (quoting *Gilbertson v. Allied Signal*, 328 F.3d 625, 631 (10th Cir. 2003);

The facts of this case are similar to those presented in *Rasenack* and *LaAsmar*. In those cases, the Tenth Circuit applied a *de novo* standard of review under 29 C.F.R. § 256-1(l) even though "the administrator belatedly issued a decision denying the claimant's administrative appeal" after the claimant had filed a lawsuit. *LaAsmar*, 605 F.3d 789 at 799. The court in *LaAsmar* determined that the relevant fact was that the decision was not rendered timely. In *Rasenack*, the Tenth Circuit adopted the same reasoning as in *LaAsmar*, stating that although the administrator denied the claim on administrative review, "it did so substantially outside the time period within which the Plan vested it with the discretion to interpret and apply the Plan" and thus "was not acting within the discretion provided by the Plan." 605 F.3d at 797 (citing *Gilbertson*, 328 F.3d at 631).

Reliance did not inform Plaintiff of its denial of her appeal until November 14, 2011, more than four months after the appeal and substantially outside of its statutory deadline. Reliance's final determination was not, therefore, a valid exercise of its discretion. Accordingly, the Court will apply a *de novo* standard or review to Plaintiff's claims.

**C.   Additional Briefing**

Reliance has briefed this case assuming that the arbitrary-and-capricious standard of review applies. Plaintiff asserted entitlement to a *de novo* standard of review, but subsequently argued that even under an arbitrary and capricious standard, the evidence in the record fails to support Reliance's decision to deny her benefits. Doc. 27-1 at 15. The Court is obligated to apply the correct standard of review even where the parties have not applied the proper standard. *Ray v. UNUM Life Ins. Co. v. Bruch*, 314 F.3d 482, 485 (10th Cir. 2002) (10th Circuit reversed and remanded case for court to apply *de novo* standard of review, even though parties did not

brief standard of review and presumed that arbitrary-and-capricious standard applied at oral argument; rejecting arguments that doctrine of waiver or invited error applied).  The Court has reservations in applying the *de novo* standard of review without the benefit of briefing from Reliance addressing this issue.  Accordingly, the Court will permit Reliance to address this issue in briefing to be submitted within ten days of the issuance of this opinion, along with any further law or facts to suggest that a different standard of review applies.[2]   Plaintiff will be permitted to respond within ten days of Reliance's supplemental briefing.

      The Court also notes that when a district court reviews a denial of benefits *de novo*, it may supplement the record "when the circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision." *Hall v. Unum Life Ins. Co. of Am.*, 300 F.3d 1197, 1202 (10th Cir. 2002); *see also McDowell*, 555 F. Supp. 2d 1361 (because "the [c]ourt has determined that a *de novo* standard of review is appropriate in this case, the [c]ourt will not cut off the administrative record at the point in time when the suit was filed," and the parties will have the opportunity to supplement the record as necessary.").  The Court must determine whether to decide the case solely on the basis of the documentary record before the plan administrator, or to allow testimony or other evidence that is not part of the administrative record.  Thus, the Court requests that the parties also address this issue in the supplemental briefing.

---

[2]Plaintiff has asserted that even if a "substantial compliance test" were still valid in light of the current regulations, Reliance cannot establish that it was substantially compliant with the procedural regulations in order to avoid *de novo* review.  Doc. 27-1 at 15.  Reliance failed to respond to this argument.

WHEREFORE,

I.  **IT IS ORDERED** that *Defendants' Motion for Summary Judgment* (Doc. 23) is **DENIED**;

II. **IT IS FURTHER ORDERED** that *Plaintiff's Response in Support of Motion to Reverse ERISA Benefits Denial and Motion to Strike Post-Appeal Material From the Administrative Record* (Doc. 27) is **GRANTED, IN PART,** in that the Court finds that Plaintiff has exhausted her administrative remedies, and that a *de novo* standard of review governs her claim.  The Court will defer its ruling on Plaintiff's request for reinstatement and proper calculation of her benefits until it has received additional briefing from the parties.

III. **IT IS FINALLY ORDERED THAT** Reliance submit additional briefing, consistent with this opinion, within 10 days of its entry; and that Plaintiff issue its response within 10 days of Reliance's filing of its supplemental brief.

_____
UNITED STATES DISTRICT JUDGE