IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JEANNETTE FITZGERALD,

     Plaintiff,

vs.                                   Civ. No. 11-956 KG/CG

LONG-TERM DISABILITY PLAN
OF PACKARD'S ON THE PLAZA, INC.,
and RELIANCE STANDARD LIFE
INSURANCE COMPANY,

     Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiff's Motion to Reverse ERISA Benefits Denial and Motion to Strike Post-Appeal Material from Administrative Record (Plaintiff's Motion), filed on June 14, 2012. (Doc. 27-1). Defendants filed a response on June 14, 2012, and Plaintiff filed a reply on June 28, 2012. (Docs. 29 and 32).

On April 4, 2013, the Court entered a Memorandum Opinion and Order granting, in part, Plaintiff's Motion.[1] (Doc. 34). The Court found "that Plaintiff has exhausted her administrative remedies, and that a *de novo* standard of review governs her claim." *Id.* at 1. The Court, however, deferred ruling on Plaintiff's request for reinstatement of Employment Retirement Income Security Act (ERISA) benefits and for a proper calculation of both past and future ERISA benefits until it received additional briefing on the following: (1) the Court provided Defendant Reliance Standard Life Insurance Company (Reliance) an opportunity to apply the *de novo* standard of review and to present "further law or facts to suggest a different standard of

---

[1] In addition, the Court denied Defendants' Motion for Summary Judgment (Doc. 23).

review;"[2] and (2) the Court requested that the parties address whether the Court, in applying a *de novo* standard of review, should consider evidence outside of the administrative record.  *Id*. at 16.  Defendants filed their supplemental brief on April 9, 2013, and Plaintiff filed her supplemental brief on April 17, 2013.  (Docs. 35 and 36).

Having reviewed Plaintiff's Motion, the accompanying briefs, the supplemental briefs, and the administrative record, the Court grants Plaintiff's Motion in part.

*A.  Background*

Packard's On The Plaza employed Plaintiff Jeanette Fitzgerald as a weaving specialist. Through this employment, Plaintiff participated in a disability insurance plan (Plan), issued and administered by Reliance.  Plaintiff received both short-term disability (STD) and long-term disability (LTD) benefit payments until February 9, 2011, when Reliance determined that Plaintiff no longer qualified as totally disabled under the Plan.  On July 11, 2011, Plaintiff appealed Reliance's decision through the administrative process provided under ERISA and then filed this lawsuit on October 26, 2011, seeking restoration of her benefits and a correction of her benefits rate.  Reliance did not deny Plaintiff's appeal until November 14, 2011.

The Court subsequently found that "Reliance did not inform Plaintiff of its denial of her appeal until … more than four months after the appeal and substantially outside of its statutory deadline."[3]  (Doc. 34) at 15.  Consequently, the Court determined that Reliance's denial of Plaintiff's appeal did not constitute a valid exercise of Reliance's discretion and that a *de novo* standard of review should apply to Plaintiff's restoration of benefits claim.  *Id*.  The parties agree

---

[2] The Court permitted Plaintiff to respond to Reliance's supplemental briefing.

[3] Applicable administrative appeals deadlines are found at 29 C.F.R. §§ 2560.503–1(i)(1)(i); 2560.503-1(i)(3)(i); and 2560.503-1(i)(4).

that a *de novo* standard of review should apply to the miscalculation of benefits claim.  *See* (Doc. 29) at 11 n. 11.

Defendants argue in their supplemental briefing that Reliance substantially complied with the ERISA deadline for deciding Plaintiff's appeal and that the Court should, therefore, review Plaintiff's restoration of benefits claim under an arbitrary and capricious standard of review. Defendants further argue that even if the Court applies a *de novo* standard of review they are entitled to a judgment in their favor on the restoration of benefits claim.  Plaintiff argues, on the other hand, that Reliance did not substantially comply with the appeal time limit and that a *de novo* standard of review should apply to her restoration of benefits claim.  Plaintiff further contends that she should prevail on her restoration of benefits claim under either a *de novo* or arbitrary and capricious standard of review.

Plaintiff also moves to strike Dr. Mark Kaplan's Independent Peer Review report, because Dr. Kaplan, Reliance's medical consultant, completed the report after the ERISA deadline for deciding an appeal.  In addition, Plaintiff contends that Reliance must revise the benefits rate to include consideration of her commissions and her 2008 W-2 earnings. Defendants argue that the Court should consider Dr. Kaplan's report and that Reliance correctly calculated Plaintiff's benefits.

### 1. The Plan

#### a. Total Disability

Because Reliance paid disability benefits to Plaintiff for 24 months, Plaintiff has to show that she is totally disabled in order to continue to receive LTD benefits.  (Doc. 22) at 6.  To be totally disabled, an insured must demonstrate that she "cannot perform the material duties of Any Occupation."  *Id.*  An insured is also totally disabled "if due to an Injury or Sickness he or she is

capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis." *Id.* "Any Occupation" is defined as "an occupation normally performed in the national economy for which an Insured is reasonably suited based upon his/her education, training or experience." *Id.* at 5.

### b. Covered Monthly Earnings

Under the Plan, the monthly disability benefits are referred to as "covered monthly earnings." Covered monthly earnings are the amount of wages reported on an insured's "W-2 form averaged over the lesser of:

(1) the number of months worked; or

(2) the 36 months;

just prior to the date Total Disability began. W-2 earnings includes [sic] base pay [and] commissions …, but excludes bonuses…." *Id.* at 5. In this case, Plaintiff worked less than 36 months. She also earned both commissions and bonuses as reflected in the Packard's On The Plaza's pay stubs. Administrative Record (AR)[4] 854-61.

### 2. Approval of STD and LTD Benefits

On August 27, 2008, Plaintiff slipped and fell on a wet floor at work, landing on both knees and injuring her knees and back. AR 90. A short time later, Plaintiff again injured her knees at work when an employee carrying a rolled up rug struck her and she fell on her right knee. AR 89. Plaintiff sought treatment from an orthopedist, Dr. James Lubowitz, who performed arthroscopic surgery on her right knee on November 19, 2008. AR 99, 100-02, 880. On December 19, 2008, Dr. Lubowitz completed a Physician's Statement stating that Plaintiff was unable to work as of November 6, 2008. AR 95. Reliance, thereafter, accepted Plaintiff's

---

[4] The Administrative Record in this case consists of a claim file, which contains 892 pages in numerous volumes, and is designated by the Court as the AR without reference to volume.

claim for STD benefits and began paying Plaintiff STD benefits, followed by LTD benefits.  AR 76.

Plaintiff returned to Dr. Lubowitz on March 27, 2009.  Dr. Lubowitz stated in his treatment records of that date that Plaintiff "can return to restricted work duty (sedentary) if available."  AR 815.  On April 17, 2009, Dr. Lubowitz treated Plaintiff again and scheduled her for a Functional Capacity Evaluation (FCE).  AR 816.  During that visit, Dr. Lubowitz indicated that Plaintiff might need further knee surgery, and reported that "[h]opefully she can return to light duty work on June 1, 2009."  *Id*.

Plaintiff then began seeing Dr. Paul Legant, an orthopedic surgeon, who also suggested an FCE and opined that by the first week of July, Plaintiff "would be able to return to work to at least a sedentary type duty."  AR 745.  On July 7, 2009, Dr. Legant released Plaintiff to return to work as of July 8, 2009.  AR 792.  On the work release form, Dr. Legant described Plaintiff as being able to perform "sedentary work."  *Id*.  Subsequently, in August 2009, after determining that Plaintiff was still experiencing symptoms in both knees, Dr. Legant referred Plaintiff to a pain specialist, deferring to that doctor regarding her future "treatment, work status, medications, and disability forms, etc."  AR 748.

On July 14, 2009, Plaintiff began seeing Dr. Steve Kidman, a rehabilitation and pain physician, who acknowledged the "permanent sedentary work release" which Dr. Legant issued.  AR 648, 749-751.  Dr. Kidman also acknowledged throughout his office notes a maximum medical improvement date of June 18, 2009.  AR 640-43, 645-48.

On July 16, 2009, Dr. Kidman recommended therapy, and released Plaintiff from performing any work for three months beginning on July 16, 2009.  AR 648.  On that date, Dr. Kidman completed a workers' compensation certificate for Plaintiff's claim but did not respond

to the questions on the form regarding how long Plaintiff could perform various activities in an eight-hour workday, including standing, walking, sitting, driving and using her hands for various tasks.  AR 649.  On September 3, 2009, Dr. Kidman completed a form for Reliance and stated that Plaintiff was incapable of performing sedentary work and could not sit for more than an hour before she needed to elevate her legs and apply ice to relieve pain and swelling.  AR 743.  On October 15, 2009, Dr. Kidman continued Plaintiff's work release for an additional three months, but did not address what Plaintiff's functional restrictions were.  AR 723.  On December 15, 2009, Dr. Kidman noted that a knee brace helped with "function and ambulation," but not with the pain.  AR 642.

On January 3, 2010, Dr. Kidman completed another disability form for Plaintiff, which stated that the release from work would continue "until further notice."  AR 650.  Dr. Kidman did not address Plaintiff's functional restrictions except to state that she was unable to work.  *Id.* In March 2010, Dr. Kidman noted again that a knee brace helped with "function and ambulation," but not with the pain.  AR 641.  Dr. Kidman also prescribed the University of New Mexico Pain Clinic.  AR 640.

Dr. Kidman referred Plaintiff to another orthopedist, Dr. Steven Jones, who began treating Plaintiff in late 2010.  AR 537, 394-395, 354.  Dr. Jones ordered magnetic resonance imagings (MRIs) of Plaintiff's knees.  AR 395.  On November 3, 2010, Dr. Jones examined Plaintiff and noted "some mild tenderness," but stated that "[t]he knee is otherwise stable."  *Id.* He further observed that Plaintiff was "taking a lot of pain medications."  *Id.*

Plaintiff also treated with Dr. Caroline Kingston, a family practice doctor, who diagnosed Plaintiff with depression as well as knee pain.  AR 586, 601-602, 604, 616.  Contrary to Dr.

Jones' November 3, 2010, observation, in October 2010, Dr. Kingston prescribed only a non-narcotic pain medication and topical cream.  AR 444.

### 3. Termination of LTD Benefits

On December 29, 2010, Reliance informed Plaintiff that after the first 24 months of receiving benefits, the Plan requires her to establish she is unable to perform the material duties of any occupation in order to continue to receive LTD benefits.  AR 566-67.  Reliance added that it had reviewed Plaintiff's updated medical records, and that the sedentary restrictions and limitations identified by Dr. Legant in July 2009 continued to be supported by the medical evidence.  AR 567.  Reliance then "determined that while [Plaintiff  was] unable to work in [her] normal occupation, [she] appear[ed] capable of sedentary work activity."  *Id*. Reliance stated that its vocational staff concluded that Plaintiff could perform, and was qualified for, the occupations of information clerk, travel clerk and reservations agent.  *Id*. Reliance concluded by stating that Plaintiff would no longer satisfy the definition of total disability applicable to her claim after February 9, 2011, and that her claim had been closed.  *Id*. Reliance then advised Plaintiff of her right to appeal. AR 568.

On January 26, 2011, Plaintiff informed Reliance of her concern that its review utilized records that were incomplete.  AR 562-63.  Plaintiff, therefore, submitted additional records for Reliance's review.  *Id.* Plaintiff included a statement by Dr. Kingston on a prescription note, dated January 7, 2011, that stated Plaintiff could not resume work of any kind for at least six months due to bilateral neuropathic knee pain, fatigue, and sleep deprivation.  AR 547.  The statement did not include any treatment records or functional capabilities assessments.  *Id.*

In addition, Plaintiff included a form completed by Dr. Jones on January 5, 2011, which stated that Plaintiff "was off work at this time," without further explanation.  AR 386.  On

January 5 and 6, 2011, Dr. Jones also reviewed the MRIs, which indicated "some post meniscectomy changes in right knee.  Left knee shows some decreased edema over the patella." AR 387-88.  Plaintiff reported continued knee pain to Dr. Jones and "snapping" in her knee.  *Id.* Dr. Jones recommended physical therapy and anti-inflammatories for Plaintiff's knee.  *Id.*  He further stated that Plaintiff "would probably benefit from use of cannabis due to her chronic pain condition."  AR 388.

On January 12, 2011, Dr. Jones submitted a second form in which he stated simply that Plaintiff "cannot work any occupation."  AR 386.  Dr. Jones did not complete the functional capabilities assessment portion of the form.  *Id.*  On January 24, 2011, Dr. Kidman also completed a functional capabilities form, in which he stated only that Plaintiff was released from work "for any/all jobs or occupations."  AR 470.  Dr. Kidman, likewise, did not complete the functional capabilities assessment portion of the form.  *Id.*

On February 15, 2011, Dr. Kingston found that cannabis use improved Plaintiff's pain, sleep, and mood, although Plaintiff could not drive.  AR 415.  Shortly thereafter, on February 22, 2011, Reliance informed Plaintiff that it had reviewed the additional documentation, maintained its conclusion that Plaintiff was capable of sedentary work, and determined not to reverse its earlier decision regarding her ineligibility for additional LTD benefits.  AR 523.

On April 14, 2011, Plaintiff had completed twelve physical therapy sessions.  AR 370. Notes show that Plaintiff experienced "improvements in function and alignment" from the physical therapy.  *Id.*

### 4. Plaintiff's Administrative Appeal

On July 11, 2011, Plaintiff submitted her appeal to Reliance with additional medical documentation.  AR 503-08.  She included updated documentation, including a letter authored by

Dr. Kingston and dated April 20, 2011, in which she opined that Plaintiff was suffering from severe chronic pain which was not relieved following surgery and that "conventional medications have resulted in adverse reactions which led [Plaintiff] to preclude virtually all physical activity."  AR 492.  Dr. Kingston, however, stated that "the cannabis is providing a certain amount of relief but using it carries the possibility of decreased concentration and focus." *Id.*  Dr. Kingston also stated that Plaintiff was significantly limited in walking, standing, sitting, lifting, reaching, carrying, pushing and pulling, and that she could only sit or stand a total of 4 hours, with breaks every 2 hours, in an 8 hour workday.  AR 493.  Dr. Kingston further opined that Plaintiff's physical and neurological status "precluded her ability to hold any form of standard workplace environment."  AR 492.

Plaintiff also included Dr. Jones' record of May 11, 2011, opining that Plaintiff was significantly limited in walking, standing, sitting, lifting, reaching, carrying, pushing and pulling. AR 495-496.  Dr. Jones further recommended that Plaintiff sit or stand no more than two hours at a time, without interruption, and that such activity could not exceed a total of 3-4 hours per day.  AR 495.  Dr. Jones added that Plaintiff's chronic pain would affect her ability to concentrate in the workplace, and that her injury induced pain and limitations made it impossible for her "to maintain even a limited sedentary work schedule, [and that] locking of the right knee could result in potentially dangerous situations in the workplace or while driving an automobile." AR 496.

Dr. Kidman completed the same questionnaire on May 9, 2011, and placed even greater restrictions on Plaintiff by limiting her to a maximum of 2 hours of sitting or standing in an 8 hour work day.  AR 497.  Dr. Kidman described Plaintiff's pain as "subjectively severe."

AR 498.  However, Dr. Kidman also observed in an office note dated May 9, 2011, that "[c]annabis [was] very helpful."  AR 467.  Even as late as August 25, 2011, Dr. Kidman noted that a home exercise program and cannabis was "helpful."  AR 466.

On May 12, 2011, Dr. Jones reported that although Plaintiff had "some tenderness to palpitation" of her right knee, she was "feeling more comfortable," her knee was "stable," and the knee was "otherwise unremarkable."  AR 385.  Dr. Jones recommended that Plaintiff "continue with home exercise program and activities as tolerated."  *Id.*  He further stated that Plaintiff should see him "on an as needed basis."  *Id.*

On May 20, 2011, Dr. Jones also prepared a report in connection with Plaintiff's worker's compensation claim in which he opined that it was "reasonable to believe that there may be a psychiatric component to [Plaintiff's complaints]."  AR 381.  Dr. Jones further noted that the "degeneration of the knees will require further treatment," but that conservative treatment was appropriate at this time.  *Id.*  Dr. Jones concluded that "[a]t this point in time, other than chronic pain complaints due to mild degree of degeneration she may continue to have knee complaints going forward," and that Plaintiff "may require further surgical interaction."  AR 381-82.  Again, Dr. Jones stated that Plaintiff should see him "on an as needed basis."  AR 382.

Reliance received Plaintiff's appeal on July 15, 2011.  AR 233-34.  In response to the appeal letter, on August 3, 2011, Reliance requested that Plaintiff sign and return medical releases for Reliance to obtain updated records from her doctors.  AR 501.  Plaintiff returned the signed medical releases on August 11, 2011.  AR 490.  On August 25, 2011, Reliance informed Plaintiff's attorney that it had faxed the requests for updated medical records to Drs. Kingston, Kidman, and Jones, and suggested that he contact these providers in order to facilitate receipt of the information.  AR 486.  Reliance further stated that "because statutory and internal guidelines

set strict deadlines for completion of an appeal review, our request to these treatment providers for additional information will toll the statuary [sic] time frames for reaching an appeal determination, from the time of our request for additional information until such time as we receive the request for additional information." *Id.*

On September 7, 2011, Reliance received medical records from Dr. Kingston.  AR 234. Then, on September 15, 2011, Reliance paid for Dr. Jones' medical records which it received on September 30, 2011.  *Id.*; AR 325.

On October 13, 2011, Reliance notified Plaintiff of its intention to take another 45 days to make its decision.  AR 333.  In the same letter, Reliance also informed Plaintiff that it intended to arrange for her to undergo an Independent Medical Examination (IME), which would toll the statutory time frame again, pending Reliance's receipt of the IME report.  *Id.*  On October 18, 2011, Reliance notified Plaintiff that it had scheduled an IME for November 3, 2011.  AR 329. On October 26, 2011, Plaintiff notified Reliance that she would not attend the IME because the time for Reliance to make its decision had already passed.  *See* AR 328.  On that same day, Plaintiff filed this lawsuit.  (Doc. 1).

On November 9, 2011, Dr. Kaplan, a rehabilitation and pain physician, completed an Independent Peer Review report based on a review of Plaintiff's medical records.  AR 281-89. Dr. Kaplan concluded that Plaintiff was capable of full-time sedentary work.  AR. 286-87.

On November 14, 2011, Reliance issued its appeal decision letter to Plaintiff, affirming its termination of her benefits.  AR 307-314.  Reliance based its determination on Plaintiff's medical records as well as on Dr. Kaplan's report .  AR 308-13.  Reliance concluded that Plaintiff was not "totally disabled" as defined in the Plan, because the evidence demonstrated

that she was capable of sedentary work including work as an order clerk, receptionist, tourist information assistant, travel clerk, and information clerk.  AR 313-14.

   *5.  Plaintiff's Covered Monthly Earnings*

   Although Plaintiff stopped working due to her knee injuries in November 2008, Reliance used only the 2006 and 2007 W-2 earnings amounts, minus bonuses, to calculate Plaintiff's covered monthly earnings.  AR 806.  Plaintiff's 2006 W-2 earnings were $70, 457.47.  AR 835. Of those 2006 earnings, there is evidence in the administrative record that Plaintiff earned $2,672.73 in bonuses.  AR 808.  Plaintiff's 2007 W-2 earnings were $100,760.95.  AR 835.  Of those 2007 earnings, there is evidence in the administrative record that Plaintiff earned $14,769.68 in bonuses.  AR 808.

   In August 2008, Packard's On The Plaza offered its employees a chance to participate in its Packard's Dollars contest during Indian Market.  Employees could choose to earn merchandise or to earn commissions.  AR 499.  Packard's On The Plaza stated that it would include the Packard's Dollars commissions in the W-2 issued at the end of 2008.  AR 500. In 2008, Plaintiff chose to earn Packard's Dollars commissions.  AR 499.  Plaintiff claims that Reliance should have included the Packard's Dollars commissions in calculating her benefits as well as her Plaintiff's 2008 W-2 earnings, which amounted to $93,270.82.  AR 835.

**B.  Discussion**

   *1. The Standard of Review for Plaintiff's Restoration of Benefits Claim*

   Reliance has the burden of establishing that the "court should review its benefits decision at issue here under an arbitrary-and-capricious standard."  *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010).  Reliance argues that the doctrine of substantial compliance justifies an application of an

arbitrary and capricious standard of review for Plaintiff's restoration of benefits claim.  When "procedural irregularities" occur, like Reliance's failure to comply with the ERISA mandated time limit for deciding Plaintiff's appeal, the Court ordinarily applies a *de novo* standard of review.  *Id.*  The Tenth Circuit based this rule on 29 C.F.R. § 2560.503-1(h)(4) "which provided that when an administrator's appeal decision was not timely furnished, the claim would be 'deemed denied.'"  *Id.* at 797.  The Tenth Circuit reasoned that a plan administrator was not entitled to a deferential arbitrary and capricious standard of review when a plan administrator denied a claim on administrative appeal "substantially outside the time period within which the Plan vested it with discretion to interpret and apply the Plan."  *Id.* at 799.

The Tenth Circuit, however, held that if a plan administrator's decision was in "substantial compliance" with the ERISA deadline, then the Court could apply an arbitrary and capricious standard of review.  *Id.* at 799.  A plan administrator substantially complies with the ERISA deadline if the "procedural irregularity was (1) 'inconsequential', and (2) in the context of an on-going, good-faith exchange of information between the administrator and the claimant."  *Id.* at 800 (quoting *Finley v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 379 F.3d 1168, 1174 (10th Cir. 2004) (internal quotation marks omitted).

Effective in 2002, the United States Secretary of Labor revised Section 2560.503-1(h)(4) by eliminating the "deemed denied" language and replacing it with "deemed to have exhausted the administrative remedies…."  29 C.F.R. § 2560.503-1(*l*).  The Tenth Circuit has declined to decide whether the substantial compliance doctrine continues to apply under the revised 2002 regulation.  *LaAsmar*, 605 F.3d at 800.  Without a decision on that issue from the Tenth Circuit, the Court is bound to follow Tenth Circuit precedent and to employ the substantial compliance doctrine in this case.  *See United States v. Meyers,* 200 F.3d 715, 720 (10th Cir. 2000) (court is

bound by precedent "absent *en banc* reconsideration or a superseding contrary decision by the Supreme Court.").

The relevant administrative appellate timeline in this case includes:

1. July 11, 2011, Plaintiff appealed the denial of benefits;

2. July 15, 2011, Reliance received the appeal;

3. August 3, 2011, Reliance asked Plaintiff to sign medical releases to obtain updated treatment records;

4. August 11, 2011, Plaintiff returned the signed medical releases;

5. August 25, 2011, Reliance informed Plaintiff's attorney that it had faxed requests for updated medical records to Drs. Kingston, Kidman, and Jones, and suggested that the attorney contact those doctors to facilitate receipt of the medical records;

6. September 7, 2011, Reliance received medical records from Dr. Kingston;

7. September 15, 2011, Reliance paid for Dr. Jones' medical records;

8. September 30, 2011, Reliance received Dr. Jones' medical records;

9. October 13, 2011, Reliance notified Plaintiff that it would take another 45 days to make a decision and that it intended to arrange Plaintiff to undergo an IME;

10. October 18, 2011, Reliance notified Plaintiff that it had scheduled an IME on November 3, 2011;

11. October 26, 2011, Plaintiff notified Reliance that she would not attend the IME because Reliance failed to make a timely decision, and Plaintiff filed this lawsuit;

12. November 9, 2011, Dr. Kaplan completed his report; and

13. November 14, 2011, Reliance issued its determination of Plaintiff's appeal.

Reliance argues that from July 11, 2011, to November 14, 2011, it "was in regular contact with Plaintiff regarding the status of the appeal and the information it needed to complete its investigation." (Doc. 35) at 5. Hence, Reliance contends that the delay in issuing its decision was inconsequential and minimal considering the on-going, good-faith exchange of information. Accordingly, Reliance concludes that it has substantially complied with the applicable time limit for issuing a determination on an appeal.

Plaintiff argues that the delay was not inconsequential. Plaintiff contends that had an IME taken place there would have been a further delay in issuing a determination of the appeal, and that Reliance had no need for an IME except to have a basis for denying the appeal. Additional delay alone, however, does not necessarily make the delay not inconsequential. The doctrine of substantial compliance actually contemplates delay so long as there is an on-going, good faith exchange of information. Moreover, Plaintiff's argument that Reliance sought an IME to bolster a denial of an appeal is merely speculative. An IME could either support Plaintiff's appeal or weaken her appeal.

Next, Plaintiff argues that the delay did not occur in the context of an on-going, good faith exchange of information. Plaintiff notes that Reliance did not communicate with her between August 25, 2011, and October 13, 2011. Although Reliance did not communicate with Plaintiff between August 25, 2011, and October 13, 2011, Reliance was diligently obtaining medical records during that time. Reliance needed those medical records before it could decide whether to require an IME. Once Reliance received the last medical record, it took Reliance two weeks to determine that an IME was necessary and to communicate that decision to Plaintiff. Under these circumstances, the delay between August 15, 2011, and October 13, 2011, was inconsequential and occurred in the context of an on-going, good faith exchange of information.

Nonetheless, Plaintiff attempts to compare this case to *LaAsmar* and *Rasenack v. AIG Life Ins. Co.* 585 F.3d 1311 (10th Cir. 2009), in which the Tenth Circuit did not find substantial compliance.  In *LaAsmar*, the plan administrator did not decide an appeal for 170 days, never requested an extension of time, and did not attempt "to gather any additional evidence before eventually denying" the appeal.  605 F.3d at 800.  In *Rasenack*, the plan administrator took eight months to initially deny the plaintiff's claim and seven months to decide the appeal during which time a single physician's report was submitted about four months after the plaintiff filed the appeal.  585 F.3d at 1317.  The plan administrator in *Rasenack* offered no credible explanation for the delays.  *Id.*  Unlike the plan administrators in *LaAsmar* and *Rasenack* who took from 170 days to seven months to issue a denial of an appeal, Reliance took about 120 days to issue its denial of Plaintiff's appeal.  Also, unlike *LaAsmar* and *Rasenack*, when Reliance was not in active communication with Plaintiff during the appellate process, Reliance was gathering additional evidence and deciding whether to require an IME.  *LaAsmar* and *Rasenack* are, therefore, distinguishable from this case.

The Court concludes that Defendants have successfully demonstrated that Reliance substantially complied with the ERISA deadline.  That being the case, the proper standard of review for Plaintiff's restoration of benefits claims is an arbitrary and capricious one.

    *2.  Plaintiff's Restoration of Benefits Claim*

        *a.  Legal Standards*

The Tenth Circuit describes the arbitrary and capricious standard as follows:

"Using the arbitrary and capricious standard, we ask whether the administrator's decision was reasonable and made in good faith."  *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.,* 663 F.3d 1124, 1133 (10th Cir.2011) (quotation marks omitted).  "We will uphold the decision of the plan administrator so long as it is predicated on a reasoned basis, and there is no requirement that the basis relied upon be the only logical one or even the superlative one."  *Id.* at 1134.  Generally, "[w]e look for substantial evidence in the

record to support the administrator's conclusion, meaning more than a scintilla of evidence that a reasonable mind could accept as sufficient to support a conclusion." *Id.* (quotation marks omitted).

*Benson v. Hartford Life & Acc. Ins. Co.*, 511 F. App'x 680, 684 (10th Cir. 2013).

Because Reliance acts as both the claims administrator and payor of LTD benefits, the Court "must weigh the conflict 'as a factor in determining whether there is an abuse of discretion,' according it more or less weight depending on its seriousness." *Murphy v. Deloitte & Touche Group Ins. Plan,* 619 F.3d 1151, 1158 n. 1 (10th Cir.2010) (*quoting Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 115 (2008)).  The seriousness of a conflict of interest is "proportionate to the likelihood that the conflict affected the benefits decision." *Graham v. Hartford Life & Acc. Ins. Co.,* 589 F.3d 1345, 1358 (10th Cir. 2009).

"This Circuit, along with the majority of other federal courts of appeals, has held that in reviewing a plan administrator's decision for abuse of discretion, the federal courts are limited to the administrative record--the materials compiled by the administrator in the course of making his decision." *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1201 (10th Cir. 2002) (internal quotation marks and citations omitted).  "In determining whether the plan administrator's decision was arbitrary and capricious, the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision." *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992).  "In effect, a curtain falls when the fiduciary completes its review, and for purposes of determining if substantial evidence supported the decision, the district court must evaluate the record as it was at the time of the decision." *Id.* at 381.

### b. Reliance's Denial of Plaintiff's Restoration of Benefits Claim

In this case, the administrative record contains substantial evidence that Plaintiff suffers primarily from chronic knee pain occurring post-knee surgery.[5]  The question is whether substantial evidence in the administrative record demonstrates that Plaintiff's knee pain is severe enough to prevent her from performing "the material duties of Any Occupation," thereby making her totally disabled.  The administrative record contains the opinions of two of Plaintiff's treating physicians which support Reliance's position that Plaintiff is not totally disabled:  (1) Dr. Lubowitz stated at one point that Plaintiff could return to sedentary work and could "[h]opefully … return to light duty work;" and (2) Dr. Legant stated that Plaintiff would be able to work in a sedentary job.[6]  Dr. Kaplan, in reviewing the medical record, agreed that Plaintiff could perform sedentary work on a full-time basis.  Notably, Plaintiff has not challenged Dr. Kaplan's report except to argue that the Court should strike the report because Dr. Kaplan completed the report after the ERISA appeal determination deadline had passed.  Plaintiff brings this argument in her Motion to Strike Post-Appeal Material from Administrative Record.  Since the Court found that Reliance substantially complied with that deadline and that an arbitrary and capricious standard of review applies, the Court must consider all of the administrative record which Reliance had before it when it determined Plaintiff's appeal, including Dr. Kaplan's report.  Consequently, the Court denies Plaintiff's Motion to Strike Post-Appeal Material from Administrative Record.

---

[5] Although there is some evidence that Plaintiff suffers from psychiatric problems like depression, insomnia, and trouble concentrating, no mental health provider has stated that Plaintiff's mental health issues prevent her from working in any occupation.

[6] The Court acknowledges that plan administrators are not required "to accord special weight to the opinions of a claimant's physician…."  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

Contrary to the opinions of Drs. Lubowitz, Legant, and Kaplan, Plaintiff contends that the opinions of her treating physicians, Drs. Kidman, Kingston, and Jones, support her position that she is unable to perform the material duties of a sedentary job or any job on a full-time basis. In its appeal determination, Reliance rejected the total disability opinions of Drs. Kidman, Jones, and Kingston, because their respective medical records did not support the functional restrictions the physicians reported.

Reliance first rejected Dr. Kidman's May 9, 2011, assessment that Plaintiff was limited to a maximum of two hours of sitting or standing in an eihgt-hour work day, and that Plaintiff's pain was "subjectively severe." AR 497-98. Although Dr. Kidman specifically concluded as early as September 2009 that Plaintiff could not perform sedentary work, Dr. Kidman's subsequent opinions, except for the May 9, 2011, opinion, do not contain specific functional capabilities assessments which would show an inability to perform sedentary work. *See* AR 743. For instance, in October 2009, Dr. Kidman continued Plaintiff's work release for an additional three months, but did not indicate what Plaintiff's functional restrictions were. AR 723. The work release also does not specify if Plaintiff cannot perform her previous work or if Plaintiff cannot perform the work of any occupation, a distinction critical to the Plan's definition of totally disabled for the purpose of Plaintiff's appeal. In January 2010, Dr. Kidman completed another disability form in which he noted that Plaintiff was unable to work and in which he released her from work "until further notice." AR 650. Again, Dr. Kidman did not provide any functional capabilities assessment nor did he specify whether Plaintiff cannot perform only her previous work or the work of any occupation. *Id.* In January 2011, Dr. Kidman completed a disability form in which he stated that Plaintiff was released from work "for any/all jobs or occupations." AR 470. Once more, Dr. Kidman did not provide specific functional restrictions

19

to substantiate his conclusion.  *Id.*  The Court further notes that Dr. Kidman acknowledged the "permanent sedentary work release" which Dr. Legant issued.  AR 648.

Dr. Kidman also stated on several occasions that Plaintiff's function and level of pain had improved.  In December 2009 and March 2010, Dr. Kidman observed that a knee brace helped with "function and ambulation…."  AR 641-42.  Dr. Kidman also observed in an office note dated May 9, 2011, that "[c]annabis [was] very helpful."  AR 467.  Even as late as August 25, 2011, Dr. Kidman noted that a home exercise program and cannabis was "helpful."  AR 466.

Next, Reliance rejected Dr. Jones' May 11, 2011, opinion that Plaintiff was significantly limited in walking, standing, sitting, lifting, reaching, carrying, pushing and pulling.  AR 495-496.  Dr. Jones also recommended in that opinion that Plaintiff sit or stand no more than two hours at a time, without interruption, and that such activity could not exceed a total of 3-4 hours per day.  AR 495.  In addition, Dr. Jones noted that Plaintiff's chronic pain would affect her ability to concentrate in the workplace, and that her injury induced pain and limitations make it impossible for her "to maintain even a limited sedentary work schedule, [and that] locking of the right knee could result in potentially dangerous situations in the workplace or while driving an automobile."  AR 496.

The Court observes that throughout Dr. Jones' medical records, Dr. Jones' description and treatment of Plaintiff's right knee suggests that the pain would not necessarily prevent Plaintiff from performing sedentary work.  In November 2010, Dr. Jones observed that Plaintiff's knee had "some mild tenderness" and was otherwise "stable."  AR 395.  Strangely, Plaintiff indicated to Dr. Jones that she "was taking a lot of pain medications" when, in fact, Dr. Kingston prescribed only a non-narcotic pain medication and a topical cream.  AR 395, 444.  On January 5 and 6, 2011, Dr. Jones recommended only physical therapy, anti-inflammatory drugs,

20

and cannabis for pain caused by "some post meniscectomy changes in right knee" and

"decreased edema over the left patella." AR 387-88. Nevertheless, about a week later, Dr. Jones

submitted a disability form in which he stated that Plaintiff "cannot work any occupation." AR

386. Dr. Jones did not support, however, that vocational conclusion with specific functional

restrictions. Despite finding that Plaintiff "cannot work any occupation," Dr. Jones reported on

May 12, 2011, that Plaintiff's right knee had "some tenderness to palpitation," but the knee was

both "stable" and "otherwise unremarkable." AR 385. Plaintiff was also "feeling more

comfortable." *Id.* Dr. Jones further noted on May 20, 2011, that "mild degeneration" caused her

pain complaints. AR 382. Dr. Jones advised Plaintiff to continue with conservative treatment

and to come back for treatment "on an as needed basis." AR 381-82.

Finally, Reliance rejected Dr. Kingston's April 20, 2011, opinion that Plaintiff was

significantly limited in walking, standing, sitting, lifting, reaching, carrying, pushing and pulling,

and that she could only sit or stand a total of 4 hours, with breaks every 2 hours, in an 8 hour

workday. AR 493. Dr. Kingston further stated in that opinion that Plaintiff's physical and

neurological status "precluded her ability to hold any form of standard workplace environment."

AR 492.

Like Drs. Kidman and Jones, Dr. Kingston had previously opined that Plaintiff could not

work without making any specific findings of functional limitations. For example, in January

2011, Dr. Kingston stated on a prescription note that Plaintiff could not resume any kind of work

for at least six months due to knee pain, fatigue, and sleep deprivation, but did not support that

conclusion with any functional restrictions to demonstrate that Plaintiff could not perform at

least sedentary work. AR 547. Also, similar to Drs. Kidman and Jones, Dr. Kingston noted that

Plaintiff's pain improved with cannabis use. Despite her January 2011 findings of knee pain,

fatigue, and sleep deprivation, Dr. Kingston noted on February 15, 2011, that cannabis improved Plaintiff's pain, sleep, and mood, although Plaintiff could not drive.  AR 415.  Dr. Kingston further noted in April 2011 that "the cannabis is providing a certain amount of pain relief."  AR 492.  Finally, on April 14, 2011, a physical therapist noted that after twelve physical therapy sessions Plaintiff experienced "improvement in function and alignment."  AR 370.

The objective medical records of Drs. Kidman, Jones, and Kingston indicate that the physical condition of Plaintiff's right knee had not worsened since Drs. Lubowitz and Legant found that Plaintiff could perform sedentary work in the summer of 2009.  To the contrary, Plaintiff's knee function and pain has actually improved.  The Court, therefore, finds that substantial evidence in the record, i.e., more than a scintilla of evidence, supports Reliance's decision to disregard the opinions of Drs. Kidman, Jones, and Kingston.  The Court further finds that the opinions of Drs. Lubowitz, Legant, and Kaplan constitute substantial evidence that Plaintiff can perform sedentary work.  Even weighing Reliance's inherent conflict of interest, the Court finds substantial evidence in the administrative record that Reliance acted reasonably and in good faith.  Accordingly, Reliance's decision to deny Plaintiff's appeal was not arbitrary and capricious.  The Court will, therefore, affirm Reliance's decision to deny Plaintiff's appeal and enter judgment in favor of Defendants on the restoration of benefits claim.

### 3.  Calculation of Benefits

The next issue is whether Reliance correctly calculated Plaintiff's past benefits.  Plaintiff argues that Reliance improperly excluded commissions and the 2008 W-2 earnings from the calculation of benefits.  The Court reviews Reliance's calculation of benefits under a *de novo* standard of review.

Plaintiff contends first that Reliance improperly excluded commissions in calculating benefits by mislabeling commissions as "bonuses," which are properly excludable from the benefits calculation.  Plaintiff claims in her reply that she "advised Reliance that the amount of her 2008 Indian Market earnings is shown as bonuses by the employer instead of as commissions" and that Reliance should, therefore, have investigated her claim.  (Doc. 32) at 8. Plaintiff further contends that the $14,769.68 bonus deduction from her 2007 W-2 earnings and the $2,672.73 bonus deduction from her 2006 W-2 earnings were incorrect because those amounts were actually commissions.

The Court notes that Packard's On The Plaza's pay stubs clearly state what Plaintiff earned as bonuses and what she earned as commissions.  *See, e.g.,* AR 854-861.  Plaintiff does not contest the accuracy of those pay stubs.  Moreover, the August 2008 Memorandum on Packard's Dollars specifies that any commission award received under the Packard's Dollars contest would be included as compensation in the W-2 issued for that year.  AR 500.  If Packard's On The Plaza did not include Plaintiff's 2008 Packard's Dollars commissions as compensation in her 2008 W-2, there is nothing in the administrative record which indicates that Plaintiff complained to Packard's On The Plaza or to Reliance about such a mistake.  Only now does Plaintiff make an unsupported and conclusory allegation in a brief that she advised Reliance about a mistake.  *See McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1205 (10th Cir. 1992) ("It is a basic rule of insurance law that the insured carries the burden of showing a covered loss has occurred…").  Absent notice of a mistake, neither Packard's On The Plaza nor Reliance could have been expected to investigate Plaintiff's claim.  Additionally, because Reliance did not use Plaintiff's 2008 W-2 earnings to calculate benefits, Reliance would have not have considered the 2008 Packard's Dollars commissions in any event.  The evidence in the

administrative record also does not suggest that Reliance mislabeled the 2007 and 2006 commissions as bonuses.  Hence, Reliance did not miscalculate Plaintiff's benefits by mislabeling commissions as bonuses.

Plaintiff further argues that Reliance miscalculated her benefits by not including her 2008 W-2 earnings to determine her "covered monthly earnings."  The Plan defines "covered monthly earnings" as "the amount of wages … reported on his/her W-2 form averaged over … the number of months worked … just prior to the date Total Disability began."  (Doc. 22) at 5. Plaintiff asserts that since she was first unable to work on November 6, 2008, Reliance should have utilized her 2008 W-2 earning to determine her average monthly earnings for the time she did work in 2008.  Reliance contends that it did not use the 2008 W-2 earnings to calculate the benefits because there was no 2008 W-2 available "prior to the date Total Disability began."

Contrary to Reliance's interpretation of the Plan's definition of "covered monthly earnings," a plain reading of that definition shows that the phrase "prior to the date Total Disability began" refers to the number of months worked, not to the W-2 form.  In other words, the "covered monthly" wages are the averaged W-2 wages for the number of months worked "prior to the date Total Disability began."  It is also clear that the purpose of defining "covered monthly earnings" in that manner is to ensure that an insured's benefits reflect the average monthly earnings "prior to the date Total Disability began."  To achieve that purpose in this case, Reliance must take into account the 2008 W-2 earnings.  The Court will, therefore, remand this matter to Reliance to re-calculate Plaintiff's past benefits to include the 2008 W-2 earnings, including any commissions.

IT IS ORDERED that

1.  Plaintiff's Motion to Reverse ERISA Benefits Denial and Motion to Strike Post-Appeal Material from Administrative Record (Doc. 27-1) is granted in part;

2.  Plaintiff's request to strike Dr. Kaplan's report is denied;

3.  Reliance's decision to deny Plaintiff's appeal to restore benefits is affirmed;

4.  judgment will be entered in Defendants' favor on the restoration of benefits claim; and

5.  this matter will be remanded to Reliance so that Reliance includes Plaintiff's 2008 W-2 earnings and commissions in its calculation of past benefits.


_____
UNITED STATES DISTRICT JUDGE